IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KENNETH IOTT,

     Plaintiff,           Civil No. 06-6001-TC

  v.                ORDER

BILL CARTER and FRANK THOMPSON,

     Defendants.

COFFIN, Magistrate Judge:

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Plaintiff is a former correctional officer for the Oregon Department of Corrections (DOC). Defendant Carter is a security manager and defendant Thompson is the superintendent for DOC.

Plaintiff asserts, among other things, that defendants retaliated against him in violation of his constitutionally protected rights to free speech and to petition the government for redress of grievances.[1] Plaintiff asserts that after he reported that inmates were being verbally abused and insulted by DOC contractors at one work-site, defendant Carter assigned him to supervise inmates at a different work site and subjected plaintiff to coworker and inmate ridicule and a hostile environment. Plaintiff asserts that he asked superintendent Thompson to reverse the assignment decision but that Thompson did not do so.

Presently before the court are defendant Carter's motion (#38) for summary judgment and

---

[1] Plaintiff conceded summary judgment on this latter claim at oral argument. Plaintiff has not presented a whistle blower claim under state law.

defendant Thompson's motion (#33) for summary judgment. For the reasons stated below, such motions are allowed and this action is dismissed.

### Standards

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. Id. at 32. There is also no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355 (1986); Taylor v. List, 880 F.2d 1040 (9th Cir. 1989).

On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. Hector v. Wiens, 533 F.2d 429, 432 (9th Cir. 1976). The inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Valadingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. Sankovich v. Insurance Co. of North America, 638 F.2d 136, 140 (9th Cir. 1981).

2 - ORDER

Discussion

The First Amendment protects a public employee's rights, in certain circumstances, to speak as a citizen addressing matters of public concern. Pickering v. Bd. of Education, 391 U.S. 563, 568 (1968). To prove unlawful retaliation, the employee must prove 1) the relevant speech was constitutionally protected; 2) the employer took an adverse employment action; and 3) the action was substantially motivated by the protected speech. Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003). If the plaintiff carries this burden, the employer may prevail by demonstrating that its "legitimate administrative interests" outweighed the employee's interest in freedom of speech. Roe v. City of San Diego, 356 F.3d 1108, 1112, rev'd on other grounds, 125 S.Ct. 521 (2004).

The Supreme Court recently held that a public employee's speech is only constitutionally protected if the employee spoke as a citizen on a matter of public concern. "We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline. Garcetti v. Ceballos, 126 S. Ct. 1951, 1960 (2006).

Plaintiff filed his complaint prior to Garcetti. He conceded in his opposition papers that his speech to superiors and others within the DOC was not protected speech and that the related claim is subject to summary judgment under Garcetti. However, he asserts that his "speech to public employees at outside agency work sites in public settings was protected speech not made pursuant to Iott's official duties but speech that merely concerned the subject of Iott's employment." P. 5 of Opposition. Plaintiff argues that he, like any citizen, had a right to complain to public employees about their verbal abuse of inmate workers that he observed occurring in a public place. Plaintiff argues that conversations he had with host agency employees amounted to protected speech because the conversations were not "required" by DOC policy. But the issue on summary judgment is not whether plaintiff's conversations were required. Rather, the issue is generally whether plaintiff's conversations with host agency employees were consistent with and related to plaintiff's duties. The undisputed facts show that plaintiff was on the job, acting in accordance with his training, his post orders and the work-place

3 - ORDER

practices he had followed for his entire career when he spoke to host agency employees about their alleged verbal abuse before bringing that matter to his superiors.

The Garcetti Court observed that the Garcetti plaintiff, a deputy district attorney, was not acting as a private citizen when he wrote the memorandum at issue[2] to his supervisors because "when he went to work and performed the tasks he was paid to perform, he acted as a government employee." 126 S. Ct. at 1960. The Garcetti holdings did not turn on whether plaintiff was required to do something, rather, Garcetti found that plaintiff's memorandum was not constitutionally protected because it was part of his "daily professional activities, such as supervising other attorneys, investigating charges, and preparing filings." Id.

The undisputed facts indicated that when plaintiff engaged in conversations with host agency employees regarding their insults he was acting pursuant to his official duties and performing work he was paid for and expected to perform as an inmate crew supervisor- -not as a private citizen. While each of the following facts is not dispositive by itself, together they indicate that plaintiff's speech is not constitutionally protected.

First, plaintiff made the statements at issue while on the job rather than on his own time. The fact that the relevant speech occurred at work rather than in private was cited in Garcetti as some evidence that a plaintiff was not speaking as a private citizen. 126 S. Ct. at 1959. Second, plaintiff made the disputed statements to host agency employees he worked alongside of --the disputed statements were not made to members of the general public. Thus, as in Garcetti, plaintiff's speech acts were not part of any public "civic discussion" which makes it less likely that he was speaking as a "citizen." 126 S. Ct. at 1958-1959 (distinguishing speech among coworkers from "civic discussion"). Third, plaintiff's disputed conversations concerned the subject matter of his employment -- the inmate work crew he was assigned and paid to protect and supervise. The fact that the relevant speech concerned an employment related issue rather than a personal matter was cited in Garcetti as some evidence that an employee was

---

[2]Garcetti unsuccessfully claimed that he was subject to adverse employment action in retaliation for engaging in alleged protected speech, that is, for writing a disposition memorandum in which he recommended the dismissal of a case on the basis of purported governmental misconduct.

4 - ORDER

not speaking as a citizen. 126 S. Ct. at 1959.[3]

Fourth, plaintiff's post order, which provides guidelines for inmate work crew supervisors, indicated that plaintiff was expected to communicate directly with host agency employees. Plaintiff's post order provided that he was to "maintain effective communications with host agency employees to enhance professional relations, safety, security and orderly operations." Wilson Affidavit, Exh. E, IWP Post Order, p. 10. Such is strong evidence that plaintiff was "performing the tasks he was paid to perform" when he spoke directly to host agency employees about their insults and foul language before taking those issues to his supervisors. Moreover, plaintiff testified at his deposition that the directives in his post orders were consistent with what he actually understood his job duties to be while supervising inmates. Wilson Affidavit, Exh. B, 158:7-159:5.

Fifth, plaintiff testified that if host agency employees violated the Oregon Accountability Model (OAM)--as plaintiff alleges here-- it was his standard work practice to discuss that violation directly with the employee before contacting a supervisor:

> Q: When you were trained in the Oregon Accountability Model, did they discuss what to do in the event that you observed a violation of the model, do you recall?
>
> A: Past practice has always been for my whole career to handle the situation at the lowest level. First of all, you talk to somebody. If that doesn't work and the violation continues, then you contact your supervisor or you write a memo or you take disciplinary action against somebody, or-- you know, it's kind of like progressive discipline is with the inmates, it's the same with the officers and the same way with the host agencies. If I could talk to you and say, hey, let's just calm down here a little bit and have a good day, it doesn't need to go any further than this.

Wilson Affidavit, Exh. B, 158:7-159:5.

---

[3]Plaintiff has generally cited Freitag v. California Department of Corrections, 468 F.3d 528 (9th Cir. 2006) and noted that Freitag, a correctional officer, communicated orally and in writing to a state senator and independent inspector general about inaction regarding inmate sexual acting out that she found offensive; the court found that although her complaint concerned her employment, "it was certainly not a part of her official tasks to complain to the Senator or the IG about the States's failure to perform its duties properly...." 468 F.3d at 545. In the present case, plaintiff did not complain to an elected official or to an independent State agency. Instead, his conversations were with host agency employees whom he worked in tandem with at work sites. There is a substantial difference between initiating an investigation by an independent agency and talking with employees you work alongside of about matters occurring at a work site ---especially, where, as here, plaintiff's post orders and training directed him to communicate with host agency employees.

5 - ORDER

The fact that, during his "whole career," plaintiff made a practice of addressing OAM violations committed by inmates, officers and host agency employees directly, at the lowest level, again strongly suggests that when plaintiff spoke to host agency employees about their alleged OAM violations he was acting consistently with his job duties and doing the work he was paid to perform as an inmate work crew supervisor rather than as a private citizen. Such is strengthened by the fact that plaintiff also admitted he acted consistently with his past practices during the specific conversations at issue here, and that he acted in accordance with his training. Id. at 159:25-160:3; 160:9-160:25.[4]

Based on these undisputed facts, it is clear that when plaintiff spoke to host agency employees about their insults and foul language, he was not acting as a private citizen but was instead acting pursuant to his job duties and performing the activities that he was paid for and expected to perform as an inmate work crew supervisor. Or, as plaintiff himself said in his letter to BOLI after leaving the DOC, "I [was] discriminated against simply by doing my job as a correctional officer and following the Department of Corrections, Oregon Accountability Model policy." Id., 151:3-151:23 (emphasis added).

Based on the above, plaintiff's speech was not constitutionally protected and his claims fail.[5]

Even if the relevant constitutional speech was protected, and even if plaintiff's constitutional rights were violated, defendants are entitled to qualified immunity as the particular constitutional rights at issue in this particular case were not clearly established at the time of the alleged adverse actions. See discussion of relevant case law at p.p. 14-15 of Thompson's Reply.

All of plaintiff's other arguments have been considered and found unpersuasive.

---

[4]At oral argument, plaintiff for the first time mentioned Batt v. City of Oakland, 2006 WL 198041 (N.D. CA., July 13, 2006). There, plaintiff police officer reported officer misconduct. He demonstrated with a large variety of evidence that despite the official policy of the police department that misconduct be reported, the culture and express commands of supervisors created the "police code of silence" where the plaintiff was not actually expected to report misconduct and would be retaliated against should he do so. The District Court noted that an underlying factual issue was present as to whether plaintiff's speech was made pursuant to his job duties. Plaintiff here has not adequately established for the purpose of this motion that there was a difference between official policy and what he was actually expected to do in the performance of his job. As shown in the fourth and fifth factors above, plaintiff's actions were consistent with both policy and what he was actually expected to do.

[5]Plaintiff contends that defendant Thompson is liable for the First Amendment violations of defendant Carter because Thompson ratified Carter's actions. Because, as indicated above, Carter did not violate the First Amendment, Thompson is not liable.

6 - ORDER

## Conclusion

Defendant Carter's motion (#38) for summary judgment is allowed. Defendant Thompsons' motion (#33) for summary judgment is allowed. This action is dismissed.

DATED this ___8___ day of March, 2007.

THOMAS M. COFFIN
United States Magistrate Judge

7 - ORDER